

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-2003

# Garay-Mendoza v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2840

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Garay-Mendoza v. Atty Gen USA" (2003). *2003 Decisions.* Paper 363.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/363

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 02-2840 & 03-1347
_____

ORLANDO GARAY-MENDOZA,

Petitioner

v.

JOHN ASHCROFT,
ATTORNEY GENERAL,

Respondent

_____

On Petition for Review of Order of the
Board of Immigration Appeals
(Agency No. A 42 287 750)
_____

Argued: May 20, 2003

Before: SCIRICA, <u>Chief Judge</u>, NYGAARD and BECKER,
<u>Circuit Judges</u>.

(Filed July 11, 2003)

WILLIAM A. STOCK (Argued)
Dechert LLP
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103

<u>Attorney for Petitioner</u>

ROBERT D. MCCALUM
Assistant Attorney General, Civil Division
DAVID V. BERNAL
Assistant Director
MICHAEL P. LINDEMANN
JOHN D. WILLIAMS
RUSSEL J.E. VERBY (Argued)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

Attorneys for Respondent

_____

OPINION OF THE COURT

_____

BECKER, Circuit Judge.

This case arises out of what the Attorney General characterizes as a fraudulent

marriage between a Peruvian national, Orlando Garay-Mendoza ("Garay"), and an

American citizen, Amelvis Maria Rivera ("Rivera").[1]  The Immigration Judge determined

that Garay was deportable in 1996, a decision the Board of Immigration Appeals ("BIA")

affirmed in June 2002.  It is undisputed that the BIA erred in its initial analysis of the

case, when it held that Garay was deportable on the ground that the Attorney General had

determined, before the second anniversary of Garay's gaining conditional permanent

resident status, that his marriage was fraudulent.  As Garay pointed out in his Motion to

Reconsider the BIA's decision, the Attorney General did not make this determination

---

[1]Rivera was her maiden name.  While married to Garay, her name was Amelvis Maria Garay.
She has since remarried, and her name is now Amelvis Maria Parrilla.  We will refer to her
throughout by Rivera, the name she used when she met Garay, in order to eliminate any potential
confusion.

within the required two-year period.

In its second rendering, the BIA determined that Garay was deportable on the alternate ground that his conditional resident status had been terminated after he failed to file a joint petition to gain permanent status and his petition to have that requirement waived was rejected. In that decision, the BIA specifically declined to review the denial of Garay's request for a hardship waiver, asserting that Garay had waived any right to such review by failing to raise the issue before the Immigration Judge. However, finding that the denial of Garay's waiver request was before the Immigration Judge and was reviewed by him, we conclude that the BIA erred when it failed to address this issue in its decision. The petition for review will therefore be granted and the matter remanded to the BIA for review of the denial of Garay's application for a hardship waiver.

## I.

Garay, a Peruvian native, married Rivera, a U.S. citizen, in August 1988, some months after they first met in early 1988. In May 1989, Rivera filed an I-130 immediate relative immigrant visa petition on behalf of Garay, seeking to secure him permanent resident status as the spouse of a U.S. citizen. Because he had entered the U.S. illegally, in October 1989 Garay returned to Peru to await approval of the petition. Upon receiving this approval, Garay was granted a visa in Lima, Peru, and he immigrated to the U.S. in October 1989 as a conditional permanent resident.

While conflicting testimony given by Garay and Rivera make it difficult to accurately track the progress of their relationship, it is clear that their marriage was rocky from the outset. Indeed, it appears that Rivera asked Garay to leave the house in December 1988, only months after they were married. In January 1989, the two decided

3

to "get[] together again as boyfriend/girlfriend." App. at 38. This was a short-lived reunion, however, and Garay testified that he and Rivera decided to get a divorce in spring of 1989. They initiated divorce proceedings at that time, but then had a change of heart and apparently stopped the proceedings.[2] It appears that the two decided again to separate in June 1989. Nonetheless, Garay testified that Rivera co-signed a loan used to purchase Garay's plane fare back to Peru in fall of 1989.[3] While awaiting his visa in Peru in October 1989, Garay called Rivera to ask if he could move in with her again upon his return to the U.S., and she said they would discuss the possibility when he returned. When Garay reached the U.S., however, Rivera refused to let him move in. They were divorced in March 1991.

Under 8 USC § 1186a(c)(1) and (d)(2), Garay and Rivera were required to petition the INS to have the conditional nature of Garay's permanent resident status removed during the 90-day period before the two-year anniversary of the grant of his conditional permanent resident status. Failure to do so would lead to termination of his conditional permanent resident status under 8 USC § 1227(a)(1)(D)(i). However, Garay and Rivera got divorced before the onset of the 90-day window, and therefore they could not file a joint petition. Instead, on November 12, 1991, Garay filed an application for a hardship waiver of the requirement to file a joint petition for removal of his conditional status pursuant to 8 USC § 1186a(c)(4)(B), on the ground that his marriage to Rivera had been

---

[2]The Immigration Judge suggested that these proceedings were never in fact halted.

[3]This assertion was contradicted by Rivera's testimony.

entered into in good faith.[4]  After an interview by Immigration Examiner Lisa Hoechst, the INS District Director determined that Garay's marriage to Rivera was fraudulent. Consequently, Garay's waiver application was denied by the INS, which sent him notice of the termination of his conditional permanent resident status on January 10, 1995.

In February 1995, the INS issued Garay an Order to Show Cause and he was charged with being deportable on the basis of the termination of his conditional permanent resident status and as an individual having committed marriage fraud.  Based on testimony from Hoechst and seemingly inconsistent statements from Garay and Rivera about their courtship and marriage, the Immigration Judge determined that the marriage was fraudulent.  Especially damaging to Garay's case was the fact that he fathered twins with another woman, Maria Fernandez, contemporaneous with his re-entry into the U.S. as a conditional permanent resident based on his marriage to Rivera.  The Immigration Judge ordered Garay deported on August 6, 1996.  Garay appealed this decision to the BIA, which dismissed the appeal on June 3, 2002.

This dismissal, the parties agree, was based upon an erroneous reading of 8 U.S.C §1186a(b)(1)(A).  That section states that an alien's conditional permanent resident status shall be terminated if:

> the Attorney General determines, before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence that –

---

[4]Under this section the "Attorney General . . . may remove the conditional basis of the permanent resident status . . . if the alien demonstrates that –

(B)    The qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1) . . . ."

(A) the qualifying marriage –

    (i) was entered into for the purpose of procuring an alien's admission as an immigrant, or

    (ii) has been judicially annulled or terminated, other than through the death of a spouse. . . .

Because the INS did not make its determination on Garay's marriage within the relevant two-year period (the District Director's decision was delivered on June 10, 1995), 8 U.S.C. §1186a(b)(1)(A) was an improper basis for finding Garay deportable.

Garay filed both a notice of appeal with this Court and a Motion to Reconsider with the Board. Briefs were submitted to this Court on the Board's initial decision, but the Board subsequently took up and rejected Garay's Motion to Reconsider, and the parties then submitted new briefs on that decision. Because the Board admitted that it erred on Garay's initial appeal, the issues from the first set of briefs dropped out, and we are confronted with a new set of issues in the second set of briefs. Garay has been employed in the U.S. for 13 years and has two children who are U.S. citizens.

## II.

The primary issue remaining after the Board's decision on Garay's Motion to Reconsider is whether the Board erred by refusing to review the denial of Garay's request for a hardship waiver of the requirement to jointly file with his spouse for removal of his conditional status, pursuant to 8 USC § 1186a(c)(4)(B).[5] The Immigration Judge found

---

[5]The BIA had jurisdiction to review the decision of the Immigration Judge under 8 C.F.R. §§3.1(b) and 240.53(a). The BIA's jurisdiction over Garay's Motion for Reconsideration arose under 8 C.F.R. §3.2(a). The parties agree that this Court has jurisdiction pursuant to Section 309 of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1105a(a)(1), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Public L. 104-208, 110 Stat. 3009, §309(a), (c).

that Garay was deportable on two grounds: first, pursuant to 8 U.S.C. §1227(a)(1)(D), because his conditional permanent residence status had been terminated; and second, pursuant to 8 U.S.C. §1227(a)(1)(G), because he had committed marriage fraud.

As noted above, the INA allows conditional permanent residence status to be terminated, *inter alia*, where

> the Attorney General determines, before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence that –
> (A) the qualifying marriage –
> (i) was entered into for the purpose of procuring an alien's admission as an immigrant, or
> (ii) has been judicially annulled or terminated, other than through the death of a spouse. . . ,

8 USC § 1186a(b)(1)(A),

or where the alien fails to adhere to the 8 USC § 1186a(c) "Requirements of timely petition and interview for removal of condition," which dictate that:

> (c)(1)(A) the alien spouse and the petitioning spouse (if not deceased) jointly must submit to the Attorney General . . . a petition which requests the removal of such conditional basis . . . .

Section 1186a(c)(4)(B) allows the alien to waive out of the (c)(1)(A) requirement if:

> the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1). . .

---

The case falls under IIRIRA's transitional rules, which apply to final orders of deportation issued on or after October 31, 1996, when the alien was placed in proceedings before April 1, 1997, and which direct that judicial review is to be conducted pursuant §1105a(a)(1). *See Mwongera v. INS*, 187 F.3d 323, 327 (3d Cir. 1999).

In its decision on Garay's Motion to Reconsider, the Board stated that while it erred in its first ruling on Garay's appeal when it determined that Garay's conditional permanent status was properly terminated under 8 U.S.C. §1186a(b)(1)(A), Garay's status nonetheless was properly terminated, under USC §1186a(c)(1), because he failed to file the necessary joint petition and his request for a hardship waiver on the basis of a good faith marriage was denied. Garay now argues that the Board erred in its decision on his Motion to Reconsider by failing to consider the denial of his request for hardship waiver under § 1186a(c)(4)(B).

The Attorney General counters that Garay waived this argument by failing to raise it in front of the Immigration Judge. We disagree. The Attorney General relies on the fact that Garay's lawyer did not specifically request review of the denial of the waiver or renew his request for a waiver in the hearing before the Immigration Judge. Such a specific request was not needed here, however, because Garay's request for the waiver and the INS's denial were both in the record before the Immigration Judge, and because the question whether the waiver was properly denied was clearly addressed by the Immigration Judge when he considered whether Garay was deportable under §1227(a)(1)(D). The first clause of that section dictates that aliens whose conditional permanent resident status expires are deportable. The second clause states an exception to that general rule for aliens who have received a §1186(c)(4) hardship waiver. The BIA reasoned that despite the exception detailed in §1227(a)(1)(D)(ii), "an analysis of whether the respondent qualifies for a waiver under section 216 (c)(4) of the Act does not have to be made" if the waiver is not renewed before the immigration judge, even when determining deportability under §1227(a)(1)(D)(i). The details of the hearing, however,

8

make clear that the Immigration Judge considered the waiver issue and determined that this exception did not apply when he found Garay deportable under §1227(a)(1)(D)(i).

The fact that the Immigration Judge considered the propriety of the denial of the hardship waiver becomes obvious when we consider the content of the hearing, the bulk of which was devoted to the question whether Garay's marriage was entered into in good faith. There are two reasons why the Immigration Judge focused on this. One was to establish whether Garay was deportable under the marriage fraud provision. The second, however, must have been in order to determine whether Garay's conditional permanent resident status was properly terminated, either under §1186(b)(1)(A) (Attorney General determines marriage was fraudulent), or §1186(c)(1)(A) (failure to file joint petition and failure to get waiver). Because, for reasons explained above, §1186(b)(1)(A) was not a proper ground for termination of Garay's status, we may assume that the Immigration Judge was interested in whether the marriage was entered into in good faith for the purpose of determining whether Garay was improperly denied a hardship waiver.

In sum, the question whether the INS properly denied Garay's hardship waiver was before the Immigration Judge, he ruled on it, and the BIA was required to review it. The petition for review will be granted and the case remanded to the BIA for further proceedings consistent with this opinion.[6]

---

[6]The BIA determined that because Garay was deportable under §1227(a)(1)(D)(i), it need not reach the issue of whether the Immigration Judge erred when he found Garay deportable under the marriage fraud provision of 8 U.S.C. §1227(a)(1)(G). If the BIA reaches this issue in future, however, we note that Garay is correct in his assertion that the Immigration Judge applied an incorrect standard of proof in his analysis of this ground of deportability. Specifically, the Immigration Judge held that the INS had to prove deportability under §1227(a)(1)(G)(ii) by a preponderance of the evidence, when in fact it had to prove this ground for deportation by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 277 (1966).

_____

TO THE CLERK:

Please file the foregoing Opinion.

BY THE COURT:


/s/ Edward R. Becker
Judge